RHATIGAN v. BROOKLYN UNION GAS CO. et al.

(Supreme Court, Appellate Division, Second Department. March 4, 1910.)

1. MASTER AND SERVANT (§ 88*)—INJURIES TO SERVANT—RELATION.
   It is sufficient to create the relation of master and servant, if at the time of the accident the employé was in charge of the master's property by his assent and authority engaged in his business and under his control; it not being necessary that he be in his general employment or under a special contract.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 144; Dec. Dig. § 88.*]

2. MASTER AND SERVANT (§ 265*)—INJURIES TO SERVANT—NEGLIGENCE—INCOMPETENT SERVANTS.
   The unfitness of a fellow servant to do the work may be inferred from his physical condition.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 891; Dec. Dig. § 265.*]

3. MASTER AND SERVANT (§ 287*) — INJURIES TO SERVANT — JURY QUESTION — EMPLOYING INCOMPETENT SERVANTS.
   In an action for a servant's death while unloading coal from a boat by means of a tackle and bucket, because of the failure of a one-armed workman, operating the guy rope which controlled the bucket, to pull in the slack, permitting the rope to foul the bucket hoop and invert it, causing the bucket to fall upon decedent, whether defendant was negligent in employing an incompetent servant to operate the guy rope held for the jury.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1054; Dec. Dig. § 287.*]

4. TRIAL (§ 178*)—DIRECTION OF VERDICT.
   On motion to direct a verdict for defendant in a servant's injury action, every reasonable inference from the evidence should be resolved in plaintiff's favor.
   [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 401–403; Dec. Dig. § 178.*]

Appeal from Trial Term, Kings County.

Action by Margaret Rhatigan, as administratrix of Patrick Rhatigan, deceased, against the Brooklyn Union Gas Company, impleaded with others. From a judgment dismissing the complaint, plaintiff appeals. Reversed, and new trial granted.

Argued before WOODWARD, JENKS, BURR, THOMAS, and RICH, JJ.

Henry Brill (Louis E. Swarts, on the brief), for appellant.
Edwin A. Jones (Albert Van Winkle, on the brief), for respondent.

JENKS, J. I think that the plaintiff was dismissed wrongfully, in that her proof was sufficient to put the defendant to its proof. Her action is for negligence against the master of her intestate, whereby the latter was killed. Coal was unloading from a boat onto the premises of the defendant by the use of an apparatus that embraced a tackle, fall, and bucket. The bucket was controlled by a guy, of which one end was held by a workman whose duty was to let out the guy and to pull in its slack as the fall or hoist of the bucket required. The accident was due to the fact that the slack was not pulled in, so that it

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

fouled the hook of the bucket or the fall, so that the hook was inverted and the bucket fell and struck the intestate, who was then about his work.

The case does not present any question of negligence arising from the condition or the kind of apparatus. But the plaintiff, inter alia, complained of negligence in furnishing an unfit and incompetent servant to guide this bucket, in that he had but one arm. The plaintiff's witness Dollard, who was experienced in this work, entirely familiar with it, and who was engaged in it at the time of the accident, testified that in his opinion a man with but one arm could not keep control of that guy. He testified further as follows:

"By the Court: Q. We want to know whether a one-armed man could control the guy rope with or without wind? A. Without wind it would go up itself. By Mr. Brill: Q. How about letting it down? How about the necessity of holding the slack? A. Come down itself. It was the duty of the guy tender to keep that bucket in position by pulling the slack. In my opinion, he was able to do it as well with one hand as with two hands. By the Court: Q. What is the answer? A. I say he could hold it on a nice day. Q. With one hand? A. Yes, sir. Q. In other words, then, if it was a nice day, a man with one arm could work it just as well as a man with two? A. No, sir. Q. Is that what you have said? A. He couldn't take in the slack. The Court: I do not know what you mean. By Mr. Brill: Q. Could he take in the slack as well with one hand as he could with two? A. No, sir. Q. Was it necessary to take in that slack, in order to keep that big iron bucket in position? A. Yes, sir. Q. Could he take it in at all, when the bucket was going up, with one hand? A. No."

The defendant makes two points as to this feature of the case:

First. It says that there is no evidence that this workman was a servant of the defendant. The plaintiff had pleaded that a former defendant, Morrell, owned the boat, and that he had furnished it to a former defendant, Cox Bros. & Co., to carry this coal, which the latter had contracted to deliver to this defendant. It also appears that this maimed workman was new to the work on that day, unknown to at least some of the workers; that when this boat had unloaded before, its captain generally held the guy; that he was ill at the time in question; and that the fellow workers with the intestate were ignorant as to "whose employ the guy man was in." On the other hand, there was evidence that the defendant's superintendent, Clark, had full charge of the unloading of the boats; that defendant's servant, Tyrrell, was "boss of the boats when Clark was absent," in charge of "the crew and the boats when they were unloading"; that the apparatus belonged to the defendant, and that the witness Dollard, the engineer, and the four men then at work on the boat were employés of the defendant. There was also evidence that "many a time" Tyrrell held the guy, that Clark, the superintendent, had put men there once or twice for that purpose, and that at this time an employé of the defendant, McInerney, was in charge of the second guy on the mast which was used to swing the gaff around. Thompson, in his Commentaries on the Law of Negligence, speaking of the relation of master and servant, says:

"It is not necessary that he should have been under any general employment of the defendant, nor that he should be under any special engagement of service to him, or entitled to receive compensation from him directly. It is enough that, at the time of the accident, he was in charge of the defendant's

property by his assent and authority, engaged in his business, and, in respect to that property and business, under his control"—citing Kimball v. Cushman, 103 Mass. 194, 4 Am. Rep. 528; Wood v. Cobb, 13 Allen, 58.

Second. The defendant contends that in any event the plaintiff failed in proving incompetency, in that incompetency must be shown by specific acts. Park v. N. Y. Central & H. R. R. R. Co., 155 N. Y. 215, 49 N. E. 674, 63 Am. St. Rep. 663. But none the less the unfitness of a servant for the work at hand may be inferred from his physical condition. Labatt on Master and Servant, § 182, citing authorities. Thus in Louisville & N. R. Co. v. Davis, 91 Ala. 487, 8 South. 552, the incapacity of the servant was inferred from the fact that he had but one arm. And so in this case, if there was evidence that a one-armed man could not do the work upon the slack properly, the question then arose whether the defendant had exercised due care in the use of such a servant about such work.

Inasmuch as the plaintiff, on the question of nonsuit, was entitled to every reasonable inference from the evidence, I think that the judgment must be reversed and a new trial must be granted; costs to abide the event. All concur.